**In re HERCULES SERVICE CORPORATION, Debtor.**

**Bankruptcy No. 82–1970.**
**Motion No. 90–4059M.**

United States Bankruptcy Court, W.D. Pennsylvania.

July 7, 1990.

Joseph J. Bernstein, Bernstein and Bernstein, P.C., Pittsburgh, Pa., Zubair S. Mansori, Johnstown, Pa., for debtor.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a *Motion For Approval Of Employment, nunc pro tunc For The Period Of Time From December 24, 1981 Through October 4, 1989* filed by Zubair S. Mansori, Esq., Joseph J. Bernstein, Esq., and Bernstein and Bernstein, P.C., attorneys for Debtor–in–Possession Hercules Service Corporation ("Debtor").

Movants are cognizant of *In re Arkansas Co.*, 798 F.2d 645 (3rd Cir.1986) and *F/S AirLease II, Inc. v. Simon*, 844 F.2d 99 (3rd Cir.1988); however, they aver that

their failure to apply for Court approval of their employment prior to rendering services was due to extraordinary circumstances. After an extensive review of the law, including the aforementioned cases, this Court must reluctantly determine that Movants have failed to show extraordinary circumstances. Consequently, their Motion must be denied.

## FACTS

Debtor filed a voluntary Chapter 11 petition on January 8, 1982. The petition was prepared and reviewed by Movants Zubair S. Mansori, Esq. and Joseph J. Bernstein, Esq. The petition listed Mansori as "Main Counsel" and Bernstein as "Associate Counsel".

Movant Mansori is a Certified Public Accountant and an Attorney at Law. He began serving Debtor as a C.P.A. in 1975. He also served as an attorney for Debtor following his admission to the bar in October of 1981.

Movant Bernstein is an attorney who holds himself and his firm out as experts in the area of in bankruptcy law. He was contacted by Movant Mansori, on behalf of Debtor, to lend his expertise to Debtor's bankruptcy proceedings.

At the time Debtor's petition was filed, Movants did not apply for court approval of their employment as required by § 327(a) of Chapter 11 of the Bankruptcy Code. Movants first applied for court approval in October of 1989, nearly eight (8) years after filing the bankruptcy petition. In a separate application, Movants filed the pending Motion For Approval of Employment *nunc pro tunc* for the period of December 24, 1981 through October 4, 1989.

## ANALYSIS

The Court may approve an application of employment, *nunc pro tunc*, only if the movant did not make a timely application for prior approval due to "extraordinary circumstances" beyond the movant's control. *In re Arkansas*, 798 F.2d at 650. Extraordinary circumstances are required because "Congress chose to place the re-

quirement of court approval for the employment of an attorney, accountant, or other professional by the creditors' committee directly in the Bankruptcy Code in 1978". *Id.* at 649. Movants in the pending Motion have not alleged circumstances sufficient to be considered "extraordinary".

■ In *Arkansas*, the U.S. Court of Appeals for the Third Circuit presented a two-part test for determining whether circumstances are so extraordinary as to justify retroactive approval of appointment of Movants. *Id.* Both parts must be satisfied in order for approval to be granted. The first prong of the test allows retroactive approval to be granted only when the Court determines that it would have granted approval had the application been filed in a timely manner. *Id.* Movant Bernstein appears to have satisfied the first prong of the *Arkansas* test, while Movant Mansori does not.

Over time, Movant Bernstein has demonstrated to this Court that he is quite capable of handling bankruptcy matters. He has acted responsibly and professionally as a court-appointed trustee, as well as counsel to debtors and unsecured creditors' committees. No question is raised regarding his integrity or potential conflict of interest. It is likely that this Court would have granted approval of his application for employment had he requested it in 1981.

Movant Mansori's application, on the other hand, would most likely have been rejected by this Court due to Movant's admitted inexperience and lack of familiarity with the Bankruptcy Code and Rules. If Movant Mansori knew as little about Bankruptcy law as he now acknowledges, then his services would have been of little value to Debtor. Consequently, his application for employment would not have been approved by this Court.

The second prong of the *Arkansas* test, which Movants fail to satisfy, relates to the nature of "extraordinary circumstances". The Circuit provides a non-exhaustive list of five (5) factors to consider when determining whether circumstances are so ex-

traordinary as to warrant retroactive approval of employment.

The first factor is whether the movant bore the responsibility of applying for approval, or whether another individual bore this responsibility. If the movant bore the responsibility, then the Court is less likely to grant approval. Clearly in the case at hand the Moving Parties bore the responsibility to act and failed to do so. The failure was not for reasons beyond their control.

The second factor concerns time constraints. Was there sufficient time to request court approval before it became essential for the movant's services to begin? *See, e.g., Id.; F/S AirLease*, 844 F.2d at 107. If there was sufficient time, then approval is less likely to be granted. Movants claim that time pressures contributed to their oversight in not filing an application in a timely manner, however, Movants do not elaborate as to the nature of these time pressures. Movants' failure to explain what time pressures they consider extreme leads this Court to conclude that there was "sufficient time to request court approval before [Movants'] services [had to] begin". *F/S AirLease*, 844 F.2d at 107. Therefore, Movants do not satisfy part two of *Arkansas'* second prong.

Third, how long did the movant delay before requesting retroactive approval after learning that prior approval had not been obtained? The longer the delay, the less likely it is that the Court will grant approval. Movants appear to have satisfied the third part of *Arkansas'* second prong. Movants claim that it was on an unspecified date in 1989 that they first discovered that an application for employment had not been filed. Movants further claim that they quickly remedied the situation by filing an application for employment. The Court has not been presented with any evidence to suggest that Movants unreasonably delayed in attempting to gain retroactive approval of employment once they had actual knowledge that prior approval had not been sought.

The fourth factor examines the extent to which compensating the movant will prejudice innocent third parties. The more prej-

udice that would result from compensating the movant, the less likely it is that retroactive approval will be granted. The Court has been offered insufficient information to determine the extent to which compensating Movants would prejudice innocent third parties. However, it is difficult to imagine that there would be insignificant prejudice if Movants were compensated for their services. Clearly every dollar paid to these professionals will diminish the distribution to creditors, who incidently, are receiving only a small percentage of their claim.

Finally, any other relevant factors may be considered before deciding if retroactive approval will be granted. Again, the other relevant factors in this case do not lend support to Movants' claim that their failure to file a timely application was due to extraordinary circumstances. Movant Mansori is an attorney and a C.P.A. Movant Bernstein is an experienced bankruptcy attorney. Movants claim that Movant Mansori's inexperience at the time of filing the petition was a prominent factor in his failure to file an application for employment as required. The Court is not persuaded by this argument. An attorney must know the law. In fact, the *F/S AirLease* Court charged a *non* -attorney with knowledge of the prior approval requirement. *F/S AirLease,* 844 F.2d at 106–07. "[T]he professional person who seeks appointment [has the] responsibility to know that such approval is necessary and to insure that it has in fact been sought". *Id.* Because the law was the same when Movants filed their petition as it was when the *F/S AirLease* petition was filed, Movants are charged with knowledge of the prior approval requirement. Their failure to seek such approval does not qualify as an extraordinary circumstance.

In this case, Movants bore the responsibility for filing the application for employment. Their failure to so file was not due to circumstances beyond their control but, was instead, of Movants' "own making". *Id.* As in *Arkansas,* where the law firm failed to apply for approval "inadverten[tly]", *Id.* at 646, Movants fail to satisfy part one of *Arkansas'* second prong.

Another factor which leads the Court to conclude that Movants' failure to file a timely application was an oversight and not an extraordinary circumstance is that Movant Bernstein in paragraph 7 of his Motion advised the Court that he became the attorney for another debtor-in-possession in July 1985 and filed an application for employment in that particular case. The fact that Movants then waited until 1989 to request retroactive approval for services begun in 1981 leads the Court to conclude that their failure to file initially was due to an oversight, if not a lack of knowledge.

Counsel intimates that the practice under the prior Judge did not require this application. This writer's personal experience is to the contrary. In any event, as noted above, the law then was the same as it is today.

Movants also claim that the relative inactivity of the instant case contributed to their not being aware that they had neglected to file an application for employment sooner than 1989. However, since a prompt application is required, with exceptions allowed solely under extraordinary circumstances, the reasons for not filing in the first place are relevant. The reasons for not discovering the omission play little, if any, role.

Movants point to three (3) Court documents which refer to Movants as attorneys for Debtor. Movants claim that these documents may have led them to believe that the Court had granted approval of Movants' employment. However, in *F/S AirLease* the Court was well aware of the applicant's activity on behalf of the Debtor and still there, as here, the application for employment *nunc pro tunc* was rejected.

## CONCLUSION

For the reasons discussed in this Opinion, this Court must reach a reluctant conclusion. Denying attorneys' fees for services provided is not something the Court enjoys doing. However, because of clear Congressional intent and the "bright-line position" of the Third Circuit, *Id.* at 109, this Court is left with no alternative and

**54**

must deny Movants' Motion For Approval of Employment *nunc pro tunc.*

An appropriate Order will be issued.